**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT GREENEVILLE**

| | | |
|---|---|---|
| DONALD E. GRYDER,<br><br>*Plaintiff*,<br><br>v.<br><br>PETER BUTTIGIEG, Secretary of Department of Transportation,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:20-cv-255<br><br>Judge Travis R. McDonough<br><br>Magistrate Judge Cynthia R. Wyrick |

---

**MEMORANDUM OPINION**

---

Before the Court is Defendant Pete Buttigieg's ("the Secretary") motion to dismiss (Doc. 9), Plaintiff Donald Gryder's motion for judgment on the pleadings (Doc. 14), and Gryder's renewed motion for judgment on the pleadings (Doc. 29). For the following reasons, the Secretary's motion to dismiss will be **GRANTED**, and Gryder's motions will be **DENIED AS MOOT**.

## I. BACKGROUND[1]

Gryder is over sixty years old and has impaired hearing and limited motion. (Doc. 1, at 8, 22.) Gryder was employed by the Federal Railroad Administration ("FRA"), as a Motive Power and Equipment Railroad Safety Inspector for two periods: the first between 1989 and his removal in 1997, and the second when he was reinstated in October 2010 until he was removed again in March 2015. (Doc. 10, at 2.) He filed his first complaint with the Equal Employment

---

[1] The facts in this section are alleged in Gryder's amended complaint and accepted as true for the purposes of the Secretary's motion to dismiss. Facts from the Secretary's filings are used where necessary for background and only where Gryder did not dispute them and failed to provide such background in his complaint.

Opportunity Commission ("EEOC") in 1992, and since then, the parties have engaged in substantial administrative proceedings and litigation. (Doc. 1, at 3; Doc. 10, at 2–3.) Starting in 1999, Gryder began applying for various vacant positions with the FRA. (Doc. 1, at 2.) He applied for more than one hundred vacancies but was not accepted to any of them. (*Id.* at 2.) Plaintiff states he was continually discriminated against due to his age, mental and physical disabilities, and retaliated against for protected activity. (*Id.* at 7.)

As part of his duties at the FRA, Plaintiff inspected locomotives in his assigned territory. (*Id.* at 11.) At some unspecified time during his employment,[2] he discovered defective equipment and other dangerous conditions, informed management, and requested assistance to eliminate the dangerous conditions. (*Id.* at 11, 22.) He received no assistance, and Gryder's supervisor directed him to withhold from his official inspection reports any life-threatening conditions he discovered. (*Id*. at 11.) Additionally, although Gryder always kept management aware of his activities by submitting work schedules, inspection reports, and sending emails, when he submitted documents to receive payment, management denied them such that Gryder did not receive payment for time worked or travel expenses. (*Id.* at 13.)

Gryder also became aware that agency managers and other employees were spreading false allegations about him. (*Id.* at 17.) He received communications by mail and e-mail accusing him of a continual and ongoing laundry list of false allegations, and he responded to all of them. (*Id.* at 7.) Gryder discovered through affidavits that the managers who sent the communications did not actually write them; rather, these documents were written by "ghost" writers and presented to others to sign and send, so Gryder was never able to present his side of

[2] Gryder does not specify in his complaint when *any* of the facts he alleges occurred; he only includes the dates when he contacted or filed charges with the EEOC based on the alleged facts. (*See* Doc. 1.)

the story to the real decisionmaker or author. (*Id*. at 7–8, 33.) Gryder states that one of these documents, which contained false allegations and was disrespectful to him and his parents, created a hostile work environment and caused him to sustain an injury on the job. (*Id.* at 20.) Gryder sent several e-mails requesting assistance to then-FRA administrator Joe Szabo and other supervisors but received none. (*Id.* at 33.) However, Szabo issued a memo on March 18, 2014, stating "[v]iolence or threatening behavior in any form are unacceptable and will not be tolerated." (*Id*.) Gryder believes the threats, intimidation, and violence directed at him were the subject of that memo. (*Id*.)

Because of the stress and pressure of the work environment, Gryder sought medical treatment through the FRA's Employee Assistance Program ("EAP"). (*Id*. at 30.) Through this program, he was diagnosed with post-traumatic stress disorder ("PTSD"), among other conditions. (*Id*.) Gryder provided the medical records generated through this treatment to the FRA, and the details of his PTSD diagnosis were also included in several EEOC filings. (*Id*.) Gryder requested accommodation from a number of agency managers, but was ignored, refused, or denied by each of them. (*Id*.) Additionally, management held conference calls at least weekly to discuss a plan to terminate Gryder. (*Id.* at 28.) FRA employees attempted to force Gryder to abandon his employment. (*Id.* at 35.)

Meanwhile, the parties were engaged in extensive administrative proceedings—for each of these instances of alleged discrimination Gryder filed a complaint with the EEOC. (*See* Doc. 1.) Gryder provides extensive procedural history of the EEOC proceedings—when he initiated contact with the EEOC, when he filed charges, when the EEOC issued decisions, whether he

appealed the decisions or moved for reconsideration, and the current status of the charges.[3] (*See id.*) Based on Gryder's complaint, the Court has identified thirteen different charges he filed with the EEOC: (1) 1992; (2) February 23, 2005 (Count I); (3) February 11, 2014 (Count IIId); (4) May 2014 (Count VIII); (5) August 2014 (Count IIIa-b); (6) December 2014 (Count IIIc); (7) May 14, 2015 (Count IIIe); (8) May 2015 (Count IV); (9) April 9, 2015 (Count II); (10) April 2015 (Count VII); (11) July 30, 2015 (Count VI); (12) August 18, 2015 (Count V); and (13) July 22, 2016 (Count IX).[4] (*Id.*)

On December 4, 2020, Gryder brought this action against then-Secretary of Transportation Elaine Chao, who was succeeded by Pete Buttigieg, at which point he became the named defendant. Although the causes of action are not clearly identified, the amended complaint appears to assert the following claims against the Secretary: (1) failure to accommodate, discrimination, and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; and (3) race, national origin, and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.[5]

---

[3] These procedural histories are not necessary to reproduce here, because the Court will not base its decision on procedural deficiencies related to the EEOC cases, such as the claims being time-barred or Gryder failing to exhaust. (*See id.*) Further, the Court notes that while Gryder details the procedural histories, he does not detail the facts and circumstances of discrimination underlying each EEOC charge. (*See id.*)

[4] The complaint is organized into nine separate "counts," but each count does not state a different claim. Rather, each count describes a different EEOC complaint Gryder previously made, and, to some extent, the factual basis for the previously-filed EEOC complaint. The Court will consider all of the factual allegations in the complaint, regardless of which "count" under which they are included, in analyzing these claims.

[5] Gryder's complaint also asserts that this action is brought for "discrimination" under the First, Fifth, Thirteenth, and Fourteenth Amendments to the Constitution. (Doc. 1, at 2.) The Supreme

## II. STANDARD OF LAW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6). On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct." *Id.* at 679. For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint. *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007). This assumption of veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers

---

Court has refused to create a cause of action for a constitutional violation "aris[ing] out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Schweiker v. Chilicky*, 487 U.S. 412, 422 (1988) (citing *Bush v. Lucas*, 462 U.S. 367, 368 (1983)). Gryder makes no further reference to his constitutional claims in his complaint, and the whole of the discrimination he alleges is governed comprehensively by the statutes under which he brings additional claims. Therefore, Gryder has no constitutional remedy and the Secretary's motion to dismiss for failure to state a claim will be **GRANTED** as to the constitutional claims.

whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court notes that Plaintiff is proceeding in this action *pro se*. The Court is mindful that *pro se* complaints are liberally construed and are held to less stringent standards than formal pleadings prepared by attorneys. *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 358 (6th Cir. 2012). The Court is "not, [however,] require[d] to either guess the nature of or create a litigant's claim." *See, e.g.*, *Leeds v. City of Muldraugh*, 174 F. App'x 251, 255 (6th Cir. 2006). Likewise, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law," and ultimately, those who proceed without counsel must still comply with the procedural rules that govern civil cases, including the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure. *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006); *Whitson v. Union Boiler Co.*, 47 F. App'x 757, 759 (6th Cir. 2002); *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.*, 161 F. App'x 487, 491 (6th Cir. 2005) ("[*P*]*ro se* litigants are not relieved of the duty to develop claims with an appropriate degree of specificity."). Thus, although the standard of review for *pro se* litigants is liberal, surmounting it requires more than the bare assertion of legal conclusions. *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

On a motion under Rule 12(c), the standard is the same as that for a motion under Rule 12(b)(6). The Court must accept all well-pleaded material allegations of the pleadings of the opposing party as true, and it may grant the motion only if the moving party is nevertheless clearly entitled to judgment as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). For purposes of this determination, the Court construes the pleadings in the light most favorable to the nonmoving party and assumes the veracity of all well-pleaded factual allegations in the nonmovant's pleading. *Thurman*, 484 F.3d at 859. This assumption of veracity does not, however, extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation[,]" *Papasan*, 478 U.S. at 286.

## III. ANALYSIS[6]

### A. ADA / Rehabilitation Act Claims

Gryder brings his disability claims pursuant to the ADA. However, the exclusive remedy for federal employees alleging disability discrimination is the Rehabilitation Act, not the ADA. *Peltier v. United States*, 388 F.3d 984, 989 (6th Cir. 2004) ("This claim is governed by the

---

[6] In his response to the Secretary's motion to dismiss, Gryder attempts to rely on factual findings and legal conclusions made in the numerous prior EEOC proceedings to support all of his claims. (Doc. 13.) He argues that he does not need to make any factual allegations in the complaint if they are included in the records of the EEOC proceedings referenced in his complaint. (*Id.* at 2 ("It would appear such information would be included in the [EEOC's Office of Federal Operations] complaint file which was identified in each specific complaint number as it contains volumes of documents and could not be included in this instant Complaint filing due to the instructions to prove a "short and brief' statement.").) Gryder cites no law to support this proposition, and the Court has not found any case to suggest that references to unattached records of administrative proceedings are sufficient to discharge a plaintiff's obligation to plead facts sufficient to state a claim under Rule 12(b)(6) and the *Twombly*/*Iqbal* standard. While Rule 8 requires the complaint to be a "short and plain statement of the claim," it also "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Accordingly, the Court will not consider factual allegations contained in the administrative records that were not specifically recited in the complaint.

Rehabilitation Act, 29 U.S.C. § 791, *et seq*., which provides the remedy for federal employees alleging disability discrimination.") Therefore, the Court will construe Gryder's disability discrimination claims as Rehabilitation Act claims. However, the Sixth Circuit has stated that the ADA and the Rehabilitation Act "'share the same substantive standard,' and that is so 'despite the linguistic differences between the two acts.' Thus '[w]e review claims brought under the Rehabilitation Act as we would claims brought under the Americans with Disabilities Act of 1990.'" *Zibbell v. Mich. Dep't of Hum. Servs.*, 313 F. App'x 843, 849 (6th Cir. 2009) (internal citations omitted). "In short, the principal distinction between the two statutes is that coverage under the Rehabilitation Act is limited to entities receiving federal financial assistance, while the ADA's reach extends to purely private entities." *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997).

***i. Disability Discrimination***

"A claimant need not [] allege facts establishing a prima facie case of disability discrimination to survive a motion to dismiss under Rule 12(b)(6)." *Morgan v. St. Francis Hosp.*, No. 19-5162, 2019 U.S. App. LEXIS 29887, at *3 (6th Cir. 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)). A plaintiff "need only 'give the defendant fair notice of what [his] claim is and the grounds upon which it rests.'" *Id.* (citing *Swierkiewicz,* 534 U.S. at 512). However, the complaint must still meet the *Twombly*/*Iqbal* pleading standard by alleging sufficient factual content from which the Court, informed by its judicial experience and common sense, could draw the reasonable inference, that the FRA discriminated against Gryder with respect to his compensation, terms, conditions, or privileges of employment, because of his disability. *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678, 679). Further "at the pleading stage, a Plaintiff is not required to 'plead facts establishing

the prima facie case of discrimination' but is required to show he 'was disabled or regarded as disabled and that [he] was otherwise qualified for a position.'" *Denoewer v. Union Cnty. Indus.*, No. 2:17-CV-660, 2020 WL 1244194, at *8 (S.D. Ohio Mar. 16, 2020) (quoting *Morgan*, No. 19-5162, 2019 WL 5432041, at *1 (citing *Swierkiewicz.*, 534 U.S. at 510–12)).

The only facts Gryder alleges in support of his disability-discrimination claim are that he had PTSD and tinnitus, his employer knew of his PTSD diagnosis, and he applied for positions with the FRA was not hired. (Doc. 1, at 30.) Gryder makes the bare assertion that, "[d]espite being qualified, applying through numerous avenues and for numerous jobs, he was not selected for a single vacancy." (*Id.* at 3.) Despite the assertion that he was qualified, nowhere in his complaint does Gryder allege what those qualifications were. *Twombly*, 550 U.S. at 555, n. 3 (A complaint "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."). He does not even state when he worked for the FRA or what the duties of his position were, other than conducting some nonspecific inspections. He does not make any allegations regarding his work history, education, training, or other qualifications. (*See* Doc. 1.) Moreover, Gryder only alleges that he applied to "more than 100 separate vacancies" with the FRA. (*Id.* at 2.) He does not specify which vacancies, or which type of vacancies he applied to, or what the requisite qualifications for those vacancies were.

The allegations that Gryder had a disability and was not hired for positions to which he applied does not, without more, raise an inference of discrimination. *Denoewer,* No. 2:17-CV-660, 2020 WL 1244194, at *8 (requiring a plaintiff to plead facts that he was disabled and otherwise qualified for the position to survive a motion to dismiss on a disability-discrimination claim). Gryder's complaint does not include allegations plausibly suggesting that he was not hired for these positions because of his disability, or that he was qualified. Accordingly, the

Court cannot draw a reasonable inference of discrimination on these allegations and will dismiss Gryder's disability-discrimination claim for failure to state claim under Federal Rule of Civil Procedure 12(b)(6).

***ii. Failure to Accommodate***

Gryder also asserts a failure-to-accommodate claim. (Doc. 1, at 23.) Similar to his discrimination claim, to survive the motion to dismiss for failure to state a claim, Gryder must allege sufficient facts for the Court to draw the reasonable inference, that the FRA failed to reasonably accommodate Gryder's disability. *Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679); *Denoewer*, No. 2:17-CV-660, 2020 WL 1244194, at *8. But Gryder's failure-to-accommodate claim is devoid of any supporting factual allegations. Even assuming Gryder was qualified for his position, which he has not alleged, he has also not provided sufficient factual allegations to support that he requested a reasonable accommodation and was denied. He did not even describe the responsibilities of his position. The only factual allegation he makes on this point is, "Plaintiff requested accommodation from a number of agency managers only to be ignored, refused, and denied by all." (Doc. 1, at 23.) He does not include any factual allegations such as what *kind* of accommodation he requested, why he needed an accommodation, with whom he requested accommodation, when he requested an accommodation, or how he made the request. The single-sentence allegation he makes is a bare assertion of the legal conclusion that the FRA failed to accommodate his disability. *See Iqbal*, 556 U.S. at 679. The Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Accordingly, the Court will dismiss Gryder's failure-to-accommodate claim for failure to state a claim.

### *iii. Retaliation*

To state a retaliation claim under the Rehabilitation Act, Gryder must allege sufficient facts from which the Court can draw the reasonable inference that the FRA retaliated against him after he engaged in protected activity. *See Keys*, 684 F.3d at 609–10 (citing *Swierkiewicz*, 534 U.S. at 510–12). Gryder sufficiently alleges he engaged in a protected activity that the FRA knew of through his filing numerous charges of disability discrimination with the EEOC. *See Vorachek v. Sec. Fed. Credit Union*, No. 07-15090, 2009 WL 4506440, at *6 (E.D. Mich. Dec. 1, 2009) ("42 U.S.C. § 12203(a) prohibits 'discriminat[ion] against any individual' who 'opposed any act or practice' made unlawful by the ADA or because such individual has 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under the ADA."). However, Gryder did not allege any facts that could raise the inference that he was retaliated against *because of* his protected activity. *Id.* at *7. Gryder makes no allegations of any circumstantial evidence to support an inference of retaliation. (Doc. 1.) Gryder does not even describe the circumstances of any adverse actions, as discussed above—he does not state when he applied for vacancies, when or if he was fired, for which vacancies he applied, whether the vacancies remained open after he applied, whether he was qualified for the positions, when he requested disability accommodations, what kind of accommodations he requested, the reason managers gave for rejecting accommodations, whether his managers reacted to him filing EEOC charges, or any other information that could raise an inference of causation between his protected activities and any adverse action. (*See id.*) The Court, therefore, cannot, on these allegations, reasonably infer that the FRA retaliated against Gryder for engaging in a protected activity. Accordingly, the Court will dismiss Gryder's retaliation claim under the Rehabilitation Act for failure to state a claim.

### B. ADEA Claims

The ADEA prohibits an employer from failing or refusing to hire, discharging or discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." 29 U.S.C. § 623(a)(1); *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Gryder's claim for age discrimination plainly fails because he did not even allege his age at the times relevant to his employment. (*See* Doc. 1.) Gryder alleges in the complaint that "Defendant(s) discriminated against me based on my [] [a]ge in excess of 60." (*Id.* at 3, 8, 18, 20, 25, 28, 31, 36.) However, he does not allege what precise age he is currently, nor how old he was when acts of discrimination occurred, which he states "have been continual since filing [his] first complaint [in] about 1992"—a thirty-year period. (*Id.* at 3–36.) Additionally, he has not made any allegations about the positions or types of positions for which he applied and the requisite qualifications, his qualifications, or whether a younger person was selected for those positions. The allegation of his "age in excess of 60" alone, without any facts to analyze the circumstances of the FRA's failure to hire him, does not allow the Court to reasonably infer age discrimination under the ADEA. *See Keys*, 684 F.3d at 610 (quoting *Iqbal*, 556 U.S. at 678, 679). Accordingly, the Secretary's motion to dismiss for failure to state a claim will be granted with respect to Gryder's age discrimination claim.

### C. Title VII Claims

#### *i. Discrimination*

Title VII of the Civil Rights Act of 1964 provides that "it shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. § 2000e-2(a). To survive a Rule 12(b)(6) motion to dismiss, plaintiffs need not allege every required element of a prima facie case. *O'Connor v. Lampo Group, LLC*, No. 3:20-cv-628, 2021 WL 4480482, at *4 (M.D. Tenn. Sept. 29, 2021) (citing *Keys*, 684 F.3d at 609). Nonetheless, a complaint alleging discrimination must contain enough factual detail for a court to reasonably infer that the plaintiff was discriminated against "because of [] race, color, religion, sex, or national original." *Keys*, 684 F.3d at 610.

Even liberally construing his complaint and taking all inferences in his favor, the Court cannot reasonably infer that Gryder was discriminated against because of race, color, sex, or national origin. Gryder's complaint states that he was discriminated against based on being Caucasian, white, male, and having European origin. (Doc. 1, at 3.) As discussed at length regarding Gryder's Rehabilitation Act and ADEA claims, he has not made any allegations which would allow the Court to infer that he was qualified for the positions to which he applied. *See* Section III.A.–B., *supra*; (Doc. 1). He makes no allegations about who was selected for the positions he applied for or whether they were outside his race, color, sex, or national original classes. (*See id.*) Nor has he alleged similar-situated employees outside of these classes were treated more favorably. In fact, he makes no other references to race, color, sex, or national origin in the remainder of his complaint. (*See id.*) Accordingly, the Court will grant the Secretary's motion to dismiss on Plaintiff's race, color, sex, and national origin discrimination claims.

***ii. Retaliation***

Gryder sufficiently alleges he engaged in a protected activity that the FRA knew of because he filed a charge of race, color, sex, and national origin discrimination with the EEOC on February 23, 2005, on this basis. (Doc. 1, at 3); *see* 42 U.S.C. § 2000e-3. However, similarly

to his retaliation claim under the Rehabilitation Act, Gryder did not allege any facts that could raise the inference that any adverse actions taken against him were *because of* his filing a charge of discrimination. Gryder does not describe the circumstances of any adverse actions, as discussed above—he does not state when he applied for vacancies, when or if he was fired, for which vacancies he applied, whether the vacancies remained open after he applied, whether the individuals who were hired had not engaged in protected activity, whether his managers had any reaction to his filing this EEOC charge or any other information that could raise an inference of causation between his protected activities and any adverse action. (*See id.*) The Court, therefore, cannot, on these allegations, reasonably infer that the FRA retaliated against Gryder for engaging in a protected activity. Accordingly, the Court will grant the Secretary's motion to dismiss with respect to Gryder's Title VII retaliation claim.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** the Secretary's motion to dismiss (Doc. 9) for failure to state a claim and **DISMISSES** Gryder's complaint. Because all of Gryder's claims are hereby dismissed, his motions for judgment on the pleadings (Docs. 14, 29) are **DENIED AS MOOT**.

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

***/s/ Travis R. McDonough***
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**